UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:04CR-83-R

UNITED STATES OF AMERICA

v.

REGINALD CHANTEZ RICE, et al.

### MEMORANDUM OPINION

This matter is before the Court on motions of Defendants Reginald Rice (Dkt. # 313),

Jose-Alberto Jimenez-Huerta, German Jose Jimenez-Huerta[1], Marshall Thomas Evans, Jr. (Dkt.

# 312), Demetrius Crenshaw (Dkt. # 319), Yolanda Walker (Dkt. # 318), Damon Sheppard[2], and

Terrell Gray (Dkt. # 314) (the "Moving Defendants") to revoke detention. The United States

responded (Dkt. # 322) and supplemented its response (Dkt. # 335), and a hearing was held in

open court on January 20, 2006.  After the hearing, Rice filed proposed conditions of release

(Dkt. # 342), as did Mr. Gray (Dkt. # 341), Mr. Crenshaw (Dkt. # 347), Mr. Sheppard (Dkt. #

349), Ms. Walker (Dkt. # 350), and Mr. Evans (Dkt. # 351).  This matter is now ripe for

decision.

### DISCUSSION

At issue in the instant motion is the status of the Moving Defendants' detentions in light

of the Court's suppression of the wiretap evidence in the case and the interlocutory appeal of that

ruling by the United States.  The Court believes that these motions raise issues both of

---

[1]As reflected in the transcript of the detention hearing (Dkt. # 348), both Jose-Alberto
Jimenez-Huerta and German Jose Jimenez-Huerta moved orally to join in the motions to release.

[2]Mr. Sheppard never formally moved for revocation of his detention; however, the Court
will construe his counsel's arguments at the January 20 hearing to be such a motion.

substantive due process and of the application of the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*  Because the legal issues presented are common to all the Moving Defendants, the Court will set forth the standards generally and then address their application to each Moving Defendant separately.

**Reopening of the Detention Hearings**

The United States argues as an initial matter that the detention hearings are not properly re-opened under these circumstances.  It makes reference to § 3142(f) of the Bail Reform Act, which provides that a detention hearing: "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  The United States concedes that the Court's suppression ruling constitutes new information for purposes of the first prong of this test (Transcript, Dkt. # 348, at 27), but argues that the suppression of the evidence does not have a "material bearing" on the detention issue.  *Id.*  This argument relies on a corollary argument made by the United States: that the evidence obtained by the illegal wiretap is nevertheless permissibly used in making the detention determination.  The United States has advanced two arguments for this proposition.  One, which it advanced in the oral argument and made in its supplemental responses (Dkt. Nos. 335 and 336), is that the "evidence" listed in subsection (2) of §3142(g) refers to the weight of the evidence *with regard to risk of flight or dangerousness*, not the weight of the evidence of guilt of the crime charged in the indictment.

2

(Transcript at 25-26, 29)[3].  The second argument, which was made in the United States' written supplemental responses, is that the language of the statute indicates that evidence used in the detention hearing is not limited by the rules of admissibility at trial.  This argument is addressed below.  As to the first argument, the United States correctly notes that, in taking into account the weight of the evidence, the Court is not making a finding of guilt, as doing so would violate the presumption of innocence guaranteed to the Defendant in § 3142(j).  It goes on to argue that:

> the consideration being given here is whether the evidence of guilt has bearing on the risk of flight or danger to the community.  The wiretap evidence in this case shows the defendant was actually engaging in dangerous and illegal drug trafficking activity.  This information has direct relevance to the likelihood that the defendant would pose a danger to the community during the pendency of the case and should be considered in Court in that context.

(Dkt. # 335, 1-2).  For this proposition, the United States cites two cases from the Ninth Circuit, *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985), and *United States v. Ward*, 63 F.Supp. 2d 1203, 1208 (C.D.Cal. 1999).  The Court reads those cases to teach that, when considering the weight of the evidence against the person, the judicial officer is to consider how the weight of the evidence would affect the person's dangerousness or risk of flight - for example, strong evidence against a person could increase their risk of flight because they believe they are likely to be convicted, and could increase the likelihood of danger to the community

---

[3]The exact nature of the government's argument is somewhat unclear from the transcript. The Court asked the government whether it was advancing the argument "that the second factor, weight of the evidence, only goes to the evaluating the other three factors and is not meant to be a fact – not meant to say weight of the evidence against the defendant in regard to this case." The United States indicated that this was its argument; however, the record indicates that there may have been miscommunication.  In any case, the Court has addressed the argument in the event that this is the argument of the United States, noting that typically the United States argues that the weight of the evidence *of the person's guilt* is a factor to be considered in such situations.

because they could believe that they are more likely to be incarcerated in the future, causing them to be more likely to engage in dangerous behavior.  The Court sees no reason that the factor could not be considered in the opposite manner, if the facts are support it - i.e., that if there is little to no evidence against a person, they are less likely to pose a risk of nonappearance or to be a danger to the community.  The Court believes this interpretation is in line with the plain language of the statute (which specifies that the factor to be considered is the "weight of evidence *against the person*") as well as the case law and the purposes of the Bail Reform Act - to protect the public and the judicial system from the risks of injury and nonappearance, not to punish the defendant before trial.

**Due Process**

In *United States v. Salerno*, the Supreme Court upheld the constitutionality of the provisions of the Bail Reform Act which allow pre-trial detention as a regulatory measure to ensure safety of the community.  418 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).  In that facial challenge to the constitutionality of the statute, the Supreme Court considered both a substantive due process challenge grounded in the Fifth Amendment and an Eighth Amendment excessive bail clause challenge.  With respect to the Fifth Amendment challenge, the Supreme Court said:

> This Court has held that the Due Process Clause protects individuals against two types of government action. So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), or interferes with rights "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325-326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937).

481 U.S. 739, 746.  In that case, the criminal defendants argued that detention under the Bail Reform Act "constitutes impermissible punishment before trial."  *Id.* (citing *Bell v. Wolfish*, 441

4

U.S. 520, 535, and n. 16, 99 S.Ct. 1861, 1872, and n. 16, 60 L.Ed.2d 447 (1979)). In analyzing whether pre-trial detention under the Act constitutes impermissible punishment and therefore violates substantive due process, the Court said that:

> Unless Congress expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on " 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' " [*Schall v. Martin*, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984)], quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169, 83 S.Ct. 554, 567-568, 9 L.Ed.2d 644 (1963).

481 U.S. 739, 747. The alternative purpose discerned by the *Salerno* court was the protection of society from the criminal acts of persons on pre-trial release; it held that this was on its face a proper regulatory purpose and that application of the statute was appropriately limited to reflect that purpose. *Id.* at 747-748. The Court limited its holding, however, in a footnote in which it said "[w]e intimate no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Id.*, 747 n. 4.

There have been several cases in which a detention has been found to be so excessive as to be punitive and therefore in violation of the Fifth Amendment. *United States v. Orena*, 986 F.2d 628 (2d Cir. 1993); *United States v. Zannino* 798 F.2d 544 (1st Cir. 1986); *United States v. Theron*, 782 F.2d 1510 (10th Cir. 1986). The Sixth Circuit does not appear to have addressed the issue. However, the Court believes that the test applied by the Second Circuit Court of Appeals in *Orena* for determining whether a given detention violates Due Process is the correct one. In that case, the court said: "[t]o determine whether the length of a pretrial detention

5

violates a defendant's due process rights, we must weigh: (i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based."  986 F.2d 628, 630 (citing *United States v. Gonzales-Claudio*, 806 F.2d 334, 340 (2d Cir 1986), *United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988), and *United States v. Gotti*, 776 F.Supp. 666, 671 (E.D.N.Y. 1991)).  In light of this, an individual balancing of these factors must be made for each of the Moving Defendants.

**Reginald Rice**

18 U.S.C. § 3143(c) provides that the Court "shall treat a defendant in a case in which an appeal has been taken by the United States under section 3731 of this title, in accordance with section 3142 of this title, unless the defendant is otherwise subject to a release or detention order."  18 U.S.C. § 3142 provides that a person awaiting trial may be "released on personal recognizance or upon execution of an unsecured appearance bond," "released on a condition or combination of conditions," "temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d)," or "detained."  After a hearing, Magistrate Judge James Moyer detained Rice by order dated September 1, 2004.  In so doing, the Magistrate Judge noted that Rice:

> has a lengthy criminal history involving extreme violence coupled with drug trafficking.  The defendant has been arrested on two occasions for murder (one for complicity and the other for capital).  In addition, the defendant has three prior arrests for trafficking in a controlled substance in 1992, 1994 and 1995.  This case involves over 20 kilograms of cocaine which is an extremely large quantity for this area.  The defendant resides with his mother and a search of her residence found $229,000.00 in cash, two kilograms of cocaine behind a false wall in the basement, an M-11 assault weapon with a flash suppressor, a 40 caliber Glock and an AR-15 assault rifle with a shortened 9 inch barrel in addition to live ammunition for each weapon.

6

(Dkt. # 19).  In so holding, the Magistrate Judge found that there was probable cause to believe that Rice had committed an offense for which a maximum term of imprisonment exceeded ten years, and that there was a serious risk that he would endanger the safety of another person or the community if received.  *Id.*  He also found that there was "no condition or combination of conditions which would reasonably assure the safety of the community" and that Rice had "not overcome the statutory presumption in favor of detention."  *Id.*

Applying the balancing test from the *Orena* case to Mr. Rice's pretrial detention, the Court finds that it does not violate his Fifth Amendment due process rights.  The length of Mr. Rice's detention weighs in favor of release; as of this date, he will have been detained for approximately 22 months.  The government's interlocutory appeal is in its early stages (with briefing not scheduled to be completed until July 26, 2006 and oral arguments not yet scheduled), so the likelihood is that he will continue to be detained for several more months thereafter, and Mr. Rice will be well into his third year of detention by the time the trial can reasonably be expected to occur.  The second factor, the extent to which the United States has been responsible for the delay, weighs in favor of continued detention; the complexity and nature of the wiretap evidence in this case caused *all* parties to agree that the time taken to process the information was necessary for a fair trial in this matter.

The third factor, the strength of the evidence on which the finding of detention was made, weighs strongly in favor of detaining Mr. Rice.  As discussed above, he was detained pursuant to the Magistrate Judge's determination that no set of conditions could ensure the safety of the community if he were released, and the Court's suppression of the wiretap evidence does not materially alter this conclusion.  The factors set forth in 18 U.S.C. § 3142(g), which the Court

7

must consider when "determining whether there are conditions of release that will reasonably

assure the ... safety of any other person and the community," include the following:

> (1) The nature and circumstances of the offense charged, including whether the
> offense is a crime of violence, or an offense listed in section 2332b(g)(5)(B) for
> which a maximum term of imprisonment of 10 years or more is prescribed or
> involves a narcotic drug;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
> > (A) the person's character, physical and mental condition, family ties,
> > employment, financial resources, length of residence in the community,
> > community ties, past conduct, history relating to drug or alcohol abuse,
> > criminal history, and record concerning appearance at court proceedings;
> > and
> > (B) whether, at the time of the current offense or arrest, the person was on
> > probation, on parole, or on other release pending trial, sentencing, appeal,
> > or completion of sentence for an offense under Federal, State, or local law;
> > and
> (4) the nature and seriousness of the danger to any person or the community that
> would be posed by the person's release.

The second factor above is the only factor materially altered by the Court's suppression ruling.

The case involves a narcotic drug (cocaine), and the Magistrate Judge's findings as to the third

and fourth factors, on the basis of Mr. Rice's history of repeated trafficking and other violent

convictions, all weigh in favor of detention.

   Mr. Rice argues that, under the Court's suppression ruling, the weight of the evidence

against him is essentially zero.  However, the United States argues that subsection (f) of § 3142

dictates that the rules of admissibility of evidence do not apply in detention hearings.  This

general rule, which is typically applied to allow hearsay evidence, is in direct contradiction of 18

U.S.C. § 2515, which says:

> Whenever any wire or oral communication has been intercepted, no part of the
> contents of such communication and no evidence derived therefrom may be
> received in evidence in any trial, hearing, or other proceeding in or before any
> court, grand jury, department, officer, agency, regulatory body, legislative

committee, or other authority of the United States, a State, or a political
subdivision thereof if the disclosure of that information would be in violation of
this chapter.

"If a wiretap or other electronic surveillance is not conducted in compliance with the provisions

of Title III, it is unlawful and inadmissible in evidence in any court proceeding." *United States*

*v. Giordano* (D. Conn. 2001), citing 18 U.S.C. §§ 2511, 2515; *In re New York Times Co.*, 828

F.2d 110, 115 (2d Cir.1987); and *In re Globe Newspaper Co.*, 729 F.2d 47, 53 (1st Cir.1984).

This leaves open the possibility, discussed in *United States v. Angiulo*, 755 F.2d 969 (1st Cir.

1985), that Title III evidence not yet determined to have been unlawfully obtained, though the

defendant has challenged it as such, could be permissibly relied upon when making

determinations under the Bail Reform Act.  That situation does not present itself in the instant

motion, however, since the Court has issued a final ruling on the admissibility of the wiretap

evidence.

Nevertheless, the Court does not believe that the lack of admissible evidence dictates a

finding that there *are* conditions of release which could reasonably assure the safety of any

person or the community.  Nothing in the statute or case law requires that a court give

precedence to one of these considerations over the others; rather, they are all to be taken into

account in the process of making the safety determination.  In light of the significant weight of

the first, third and fourth factors, the Court believes that no conditions of release could

reasonably assure the safety of the community.  Therefore, the Court finds that Mr. Rice's due

process rights are not violated by his continuing detention pending trial, and will deny his

motion for release.

**Jose-Alberto Jimenez-Huerta and German Jose Jimenez-Huerta**

Jose-Alberto Jimenez-Huerta and German Jose Jimenez-Huerta were arrested with Mr. Rice on August 9, 2004 (Dkt. # 1).  Each was appointed counsel (Dkt. Nos. 13 and 14), and each executed a waiver of his right to a detention hearing (Dkt. Nos. 15 and 16).  As acknowledged by counsel at the preliminary hearing before Judge Moyer (Transcript Dkt. # 17), both Defendants were illegally in the United States and the United States Immigration and Customs Enforcement (U.S.I.C.E.) (formerly the Immigration and Naturalization Service, or INS) had placed a detainer on both of them.  (Transcript, p. 42).  The Court does not believe that this waiver necessarily precludes the Defendants from re-opening the issue of their detention in light of the Court's suppression ruling.  Therefore, the Court will return to the three-part test from the *Orena* case. As with Mr. Rice, the length of Jose-Alberto Jimenez-Huerta's and German Jose Jimenez-Huerta's detention weighs in favor of their release, and the government's conduct weighs against it.  The third factor, the strength of the evidence, is somewhat difficult to analyze due to the Defendants' waiver.  However, in light of the information in the record regarding their illegal status and the detainer, the Court can say with near certainty that the Defendants would have been detained on grounds that they presented an unreasonable risk of flight.  This is so for two reasons: the first is their illegal status, and the second is the detainer.  The Defendants' status as illegal aliens, who have now come to the attention of immigration authorities in the United States, would have a powerful motivation to attempt to flee the country if they were released. The detainer has two practical effects on the Court's ability to secure their appearance in this case: one, if they are released from the Court's detention, they will likely be detained by the I.C.E., deported, and would then not be available to stand trial.  The second is that, when considering detention under the Bail Reform Act, the judicial officer is required to balance the

10

concerns about the Defendants' appearance with their liberty interests; the I.C.E. detainer effectively means that there is very little, if any, liberty interest to protect.  Therefore, the concerns about their appearance easily outweigh the relatively minor liberty interest that is constituted by the possibility that the I.C.E. detainer would not be enforceable.  For these reasons, the Court concludes that the evidence supporting Jose-Alberto Jimenez-Huerta's and German Jose Jimenez-Huerta's detention is very strong, and they should continue to be detained.

**Marshall Thomas Evans, Jr.**

Mr. Evans was arrested on November 19, 2004.  A detention hearing was held on November 22, 2004 before Magistrate Judge Whalin, and an order of detention pending trial was entered on December 7, 2004.  In the order, Judge Whalin found that there was a serious risk that his release would endanger the safety of another person or the community; in so finding, Judge Whalin noted the following:

> The defendant's criminal history includes a conviction for Possession with Intent to Distribute Cocaine in 1989 in the United States District Court, Western District of Kentucky.  Sentence imposed was 87 months imprisonment, followed by a four year term of supervised release.  In 1992, defendant was convicted of Engaging in Organized Crime Syndicate and Trafficking in a Schedule II Narcotic.  The defendant has two pending felony cases in Jefferson Circuit Court, charging him with Trafficking in Cocaine, Persistent Felony Offender, and Trafficking in Cocaine, Second Offense.  Given the nature of these offenses and his prior criminal record, the defendant poses a danger to the community that he will engage in similar criminal activity if released.

(Dkt. # 118).  Applying the three-part test from the *Orena* case**,** the Court finds that the first two factors are essentially the same for Mr. Evans as they are for each of the preceding defendants: the first factor, length of detention, weighs in favor of release, and the second factor, government responsibility for the delays, weighs against release.  Moving on to examine, then, the third factor, the weight of the evidence on which detention was based, the Court finds that it was

significant for the reasons set forth by the Magistrate Judge. Therefore, continued detention does not violate Mr. Evans's due process rights.

**Demetrius Crenshaw**

Mr. Crenshaw was arrested on November 22, 2004. A detention hearing was held on November 29, 2004 before Magistrate Judge Whalin, and an order of detention pending trial was entered on December 7, 2004. In the order, Judge Whalin found that there was a serious risk that his release would endanger the safety of another person or the community; in so finding, Judge Whalin noted the following:

> The defendant['s] criminal history includes in January 2001 Possession of Cocaine and Marijuana; trafficking in a Controlled Substance within 1000 yards of a School. In July 2001, Possession of Cocaine; Aggravated Assault; Terroristic Threatening; Resisting Arrest and Disorderly Conduct. As of November 2004 the defendant has two [] felony drug charges pending in Jefferson District Court. Given the nature of the instant offense and the defendant's criminal history, the defendant poses a danger to the community, if released, by way of risk of violent behavior and or conduct similar to that alleged in the indictment.

(Dkt. # 119). Applying the three-part test from the *Orena* case**,** the Court finds that the first two factors are essentially the same for Mr. Crenshaw as they are for each of the preceding defendants: the first factor, length of detention, weighs in favor of release, and the second factor, government responsibility for the delays, weighs against release. Moving on to examine, then, the third factor, the weight of the evidence on which detention was based, the Court finds that it was significant for the reasons set forth by the Magistrate Judge. Therefore, continued detention does not violate Mr. Crenshaw's due process rights.

**Yolanda Walker**

Ms. Walker was arrested on November 19, 2004. A detention hearing was held on November 22, 2004 before Magistrate Judge Whalin, and an order of detention pending trial was

entered on December 7, 2004.  In the order, Judge Whalin found that there was a serious risk that

her release would endanger the safety of another person or the community; in so finding, Judge

Whalin noted the following:

> The defendant admitted to using marijuana since the age of 17 every other day
> and until a couple of months ago used approximately once a month.  She has been
> unemployed since June 2004.  The defendant's criminal history includes a[n]
> April 2001 conviction of Possession of a Controlled Substance - Third Degree
> and January 2004 a conviction of Trafficking in a Controlled Substance - First
> Degree in Jefferson Circuit Court.  She was on state court supervised probation at
> the time of the offenses alleged in the indictment.  Given the defendant's
> continued involvement with illegal substances she does pose a danger to the
> community that she will engage in similar criminal activity if released.

(Dkt. # 120).  Applying the three-part test from the *Orena* case**,** the Court finds that the first two

factors are essentially the same for Ms. Walker as they are for each of the preceding defendants:

the first factor, length of detention, weighs in favor of release, and the second factor, government

responsibility for the delays, weighs against release.  Moving on to examine, then, the third

factor, the weight of the evidence on which detention was based, the Court finds that it was

significant for the reasons set forth by the Magistrate Judge.  Therefore, continued detention does

not violate Ms. Walker's due process rights.

**Damon Sheppard**

Mr. Sheppard was arrested on January 5, 2005 in Arizona.  His initial appearance was

made on January 14, 2005 before Magistrate Judge Whalin, and on January 18, 2005 he executed

a waiver of his right to a detention hearing.  (Dkt. # 179).  As discussed above with respect to

Jose-Alberto Jimenez-Huerta and German Jose Jimenez-Huerta, the Court does not believe that

Mr. Sheppard's waiver of his right to a detention hearing bars him from reopening the issue in

light of the Court's suppression of the wiretap evidence.

13

Although Mr. Sheppard was arrested somewhat later than some of the above defendants, the Court still finds that his detention is long enough (currently approximately 18 months) to weigh in favor of release.  The second factor from the *Orena* case is the same as to Mr. Sheppard as to the other defendants; it weighs against release.  The third factor, the strength of the evidence on which the finding of detention was made, weighs in favor of detaining Mr. Sheppard.  Because he waived his right to a detention hearing, the Magistrate Judge did not have the opportunity to make the findings that go along with a detention hearing pursuant to 18 U.S.C. § 3142.  The factors set forth in 18 U.S.C. § 3142(g), which the Court must consider when "determining whether there are conditions of release that will reasonably assure the ... safety of any other person and the community," include the following:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed or involves a narcotic drug;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The case involves a narcotic drug (cocaine), and the third and fourth factors, on the basis of Mr. Sheppard's history, weigh in favor of detention. Mr. Sheppard's criminal history includes charges of trafficking cocaine and trafficking within 1000 yards of a school in 1993, and murder,

robbery, and burglary in 1995.  It also includes convictions in state court for possession of a

controlled substance (1995), for which Mr. Sheppard served three years in prison, and criminal

facilitation to murder and tampering with physical evidence, for which he served five years in

prison.  The Court concludes that his release would endanger the safety of another person or the

community and that there is no condition or combination of conditions which would reasonably

assure the safety of the another person or the community.  Continued detention would not violate

Mr. Sheppard's Fifth Amendment Due Process rights.

**Terrell Gray**

Mr. Gray was arrested on November 23, 2004 (Dkt. # 61) and a detention hearing was

held on November 29, 2004 (Dkt. # 92) before Magistrate Judge Dave Whalin.  On December 7,

2004 Judge Whalin ordered him detained pending trial. (Dkt. # 121).  In his order, Judge Whalin

found, among other things, that there was both a serious risk that Mr. Gray would not appear and

that he would endanger the safety of another person or the community.  In so finding, Judge

Whalin found that Mr. Gray:

> has an extensive criminal arrest history dating back to 1992 with several failure to
> appears.  Some of the charges include: Assault Second Degree; Providing a False
> Name to Police Officer; Carrying a Concealed Weapon; Attempting [to] Elude;
> Possession of Marijuana; Possession of Cocaine; Trafficking in Cocaine; Assault
> in the Fourth Degree and Tampering with [a] Witness.  The defendant also has a
> federal conviction in 1997 in Louisville for Possession of a Stolen Firearm and
> [was] sentenced to six month[s] with one year term of supervised release.
> Defendant presents a danger to the community based on his prior criminal record
> and the serious nature of the instant offenses.  Defendant has substantial history of
> being armed while engaged in criminal activity and drug involvement.

(Dkt. # 121).

Again applying the balancing test from the *Orena* case, the Court finds that Mr. Gray's

continued detention does not violate his Fifth Amendment due process rights. The length of his

detention weighs in favor of release.  He has been detained since early December of 2004, so currently for eighteen months, and the interlocutory appeal of the United States is in its early stages.  The second factor weighs in favor of detention as to Mr. Gray for the same reasons it does for Mr. Rice.  As to the third factor, the Court again looks to the factors set forth in § 3142(g).  Mr. Gray is charged with a crime involving a narcotic drug, and has, as Judge Whalin noted, a lengthy criminal history involving crimes of violence, drug crimes, escape, witness tampering, etc.  At least some of these appear to have occurred while Mr. Gray was on probation or parole.  In light of the fact that they involved drugs, guns and sometimes violence, the potential harm posed by Mr. Gray's release would be severe and serious.  Therefore, the strength of the three factors, as with Mr. Rice, outweigh the nullity of the second factor and Mr. Gray's continued detention would not violate his Fifth Amendment due process rights.

Also, Judge Whalin ruled that Mr. Gray was a risk of non-appearance.  In light of the information contained in Mr. Gray's criminal history regarding incidents of lying to the police and  attempting to elude arrest, the Court concludes that evidence supports this finding as well.

## CONCLUSION

For the reasons set forth above, Defendants' motions for release from custody will be **DENIED**.  An appropriate order shall issue.